525 A.2d 468

United Plate Glass Company Division of Chromalloy American Corporation, Appellant *v.* Metal Trims Industries, Inc., and The Travelers Insurance Company, Appellees.

Argued March 23, 1987, before Judges CRAIG and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Charles E. Bobinis, Bernstein and Bernstein, P.C.,* for appellant.

*David Andrew Scott, Thorp, Reed & Armstrong,* for appellee.

OPINION BY JUDGE CRAIG, May 7, 1987:

The United Plate Glass Company (UPG) appeals from an order of the Court of Common Pleas of Allegheny County entering judgment in favor of Metal Trims Industries (MTI) and the Travelers Indemnity Company (Travelers) in an assumpsit action. We affirm in part and reverse in part.[1]

On July 6, 1977, MTI entered into an agreement with the Frank Briscoe Company, a general construction contractor, concerning the Pittsburgh Convention-Exposition Center project. Under that agreement, MTI promised to furnish labor and materials for the installation of all exterior window walls and entrance doors. On November 21, 1978, UPG subcontracted with MTI to furnish labor and materials for a portion of the glass installation required for the facility.

The parties agree that UPG rendered full performance under its agreement with MTI in a timely manner.[2] This case involves UPG's claim to an unpaid balance due under the MTI-UPG contract totaling $41,541.22.

On July 6, 1982, UPG filed a complaint in assumpsit in the court of common pleas against Travelers,[3] as

---

[1] Under Pa. R.A.P. 751(a), the Superior Court transferred this case to this court, by its order dated February 25, 1986 at its Docket No. 1145 Pittsburgh, 1984, accompanied by majority and dissenting opinions of a panel. Without deciding the jurisdictional question, we have accepted jurisdiction in accordance with Pa. R.A.P. 741(a), which authorizes us to do so when, as here, no party has objected to our jurisdiction.

[2] According to the pleadings, MTI admits that UPG performed its contractual obligations subject to MTI's claim to a $1500 "backcharge" for testing services procured by MTI. MTI later discontinued its counterclaim for the backcharge however.

[3] Section 12.5 of the MTI-UPG contract provides that UPG may demand final payment from the general contractor (Briscoe) in the event that the architect fails to issue a Certificate for Payment

surety for Briscoe, and MTI. After a nonjury trial, the trial judge decided in favor of MTI and Travelers, dismissed UPG's exceptions and entered judgment accordingly.

## Metal Trims Industries

The trial judge rendered a decision in favor of MTI on the ground that the conditions precedent to UPG's right to receive final payment, under the terms of the MTI-UPG contract, had not been satisfied.

The crucial provision in that contract provides as follows:

### Article 6
#### Final Payment

Final payment shall be due when the work described in this subcontract is fully completed and performed in accordance with the contract documents and is satisfactory to the architect. Such payment shall be made in accordance with Article 5 and with paragraphs 12.3 and 12.6 inclusive of this contract.

Subject to the terms and conditions of this contract, final payment will be made to the subcontractor upon final acceptance of the work by the owner, the approval thereof by the architect and the receipt of payment in full from the general contractor.

MTI contends that the trial judge properly interpreted the quoted provision as requiring (1) final acceptance of the work by the owner, (2) approval by the architect and (3) MTI's receipt of payment from Briscoe, before MTI's duty to make final payment to UPG could

---

through no fault of UPG. Travelers, by contract with Briscoe, is liable for the unpaid claims of suppliers and subcontractors for labor and materials.

mature. Although the record is unclear on the status of the architect's approval of the finished project and on payments made to MTI by Briscoe, UPG asserts that Briscoe's work performance, bankruptcy, and litigation with the owner (Commonwealth of Pennsylvania) have significantly delayed, if not made impossible, the satisfaction of these "conditions" precedent to UPG's entitlement to final payment.

UPG argues that the factors in the second paragraph of article six are not absolute conditions precedent to payment, but rather are events which mark the time at which MTI is to make payment. Because these events are now unlikely to occur, UPG requests this court to declare UPG's entitlement to final payment despite the nonoccurrence of those events.

The determinative issue in this case is whether, under the terms of the MTI-UPG contract, payments by the owner, the general contractor, and approval by the architect are absolute conditions precedent to MTI's duty to make final payment to UPG.

The Second Restatement of Contracts provides: "In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." Restatement (Second) Contracts §227(1). The comment to section 227 observes that:

> The policy favoring freedom of contract requires that, within broad limits . . . the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture.

For example, under a provision that a duty is to be performed 'when' an event occurs, it may be doubtful whether it is to be performed only if that event occurs, in which case the event is a condition, or at such a time as it would ordinarily occur, in which case the event is referred to merely to measure the passage of time. In the latter case, if the event does not occur some alternative means will be found to measure the passage of time, and the non-occurrence of the event will not prevent the obligor's duty from becoming one of performance.

The trial judge stated that the contract provision concerning final payment unambiguously conditioned that act on the architect's approval and payment by the owner and prime contractor. We must disagree.

The first sentence of the contract provision provides that payment *shall be due* when the work is fully completed and performed in accordance with specifications to the architect's satisfaction. The parties do not dispute that UPG fully performed its duties under the terms of the contract. The third sentence of that article, however, provides for MTI's *actual payment* upon the architect's approval and the owner's and prime contractor's actual payment.

The language of article six suggests that the first sentence addresses MTI's liability to UPG for final payment. The third sentence, however, merely addresses the time at which payment is to be made. As such, section 227(1) of the Restatement guides us to the conclusion that the "conditions" of the second paragraph of article six are not absolute prerequisites to the tender of final payment. Rather, those "conditions" serve as a timing mechanism to indicate when, had the project run smoothly, MTI was to pay UPG what MTI already owed UPG.

Section 12.5 of the MTI-UPG contract corroborates our interpretation of article six of that contract. Section 12.5 states:

> 12.5 Unless otherwise provided in the Contract Documents, if the Architect fails to issue a Certificate for Payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Paragraph 12.3 or the final payment as provided in Article 6.

The quoted section provides for UPG's final payment in the event that the "conditions" of article six are not met. More significantly, the section evidences the parties' intention that UPG shall not bear the risk of loss in the event the "conditions" of article six are not satisfied—so long as the non-fulfillment of those "conditions" is not the fault of UPG.

Accordingly, we conclude that the trial judge erred in interpreting the language of the second paragraph of article six as imposing absolute conditions precedent to UPG's entitlement to MTI's final payment.

## Travelers Insurance Company

The trial judge decided in favor of Travelers because UPG had not notified Briscoe of its claim to final payment within ninety days of the completion of its work and because the one-year statute of limitations[4] negated UPG's cause of action.

Section 4 of the Pennsylvania Public Works Contractor's Bond Law of 1967,[5] 8 P.S. §194, requires UPG to give written notice to Briscoe within ninety days from

---

[4] 42 Pa. C. S. §5523(4).

[5] Act of December 20, 1967, P.L. 869.

the date on which UPG performed the last of the labor or furnished the last of the materials for which it claims payment. The trial judge concluded that UPG's letter to Briscoe, dated October 1, 1981, in which it claimed final payment under the terms of its contract with MTI, did not satisfy the ninety-day requirement.

UPG contends that the trial judge ignored evidence it presented to show that, as late as September of 1981, UPG provided labor and materials for the Convention Center. Our scope of review, when a trial judge sits without a jury and his findings of fact are approved by the court of common pleas en banc, is limited. This court will not disturb the judge's findings if not arbitrarily made and if substantial evidence supports the findings. *C. A. Hughes* & *Co. v. Metzger*, 89 Pa. Commonwealth Ct. 72, 491 A.2d 959 (1985).

UPG relies on the testimony of Mr. Gregg, a former UPG employee, who stated that UPG did not complete glazing until September, 1981 (N.T. 28). UPG also introduced a receipt indicating installation of several glass panels with the date "July 24, 1981" written at the bottom. (Plaintiff's Exhibit 7.)

The trial judge, in his opinion, relied on an MTI letter indicating substantial completion to Briscoe on February 27, 1981 (Defendant's Exhibit 7), Mr. Gregg's statement that the Convention Center opened on February 15, 1981 (N.T. 33), and field reports by Briscoe indicating that glazing activities concluded on March 23, 1981 (Defendant's Exhibits 1-3, N.T. 55). Obviously, the judge's conclusion is based on a resolution of conflicting evidence and, as such, it may not be disturbed on appeal. *In re Cummings Estate*, 330 Pa. Superior Ct. 255, 479 A.2d 537 (1984).

Accordingly, we affirm the judgment entered in favor of Travelers.

## ORDER

Now, May 7, 1987, judgment entered against the United Plate Glass Company by the Court of Common Pleas of Allegheny County, dated August 29, 1984, G. D. No. 82-12931, is reversed as to the appellee Metal Trims Industries, Inc., and affirmed as to the appellee Travelers Indemnity Company.