[No. B095849. Second Dist., Div. Five. Oct. 28, 1997.]

CAPITOL STEEL FABRICATORS, INC., Plaintiff and Appellant, v. MEGA CONSTRUCTION CO., INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication as to parts I., II., IV., and the indicated portions of part III.

1050

**COUNSEL**

Gill & Baldwin and Kirk S. MacDonald for Plaintiff and Appellant.

Greenberg & Creyaufmiller and Lawrence R. Greenberg for Defendants and Respondents.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, Capitol Steel Fabricators, Inc. (Capitol), a subcontractor, appeals from a judgment entered against it in favor of defendants Mega Construction Co., Inc. (Mega), the general contractor, and Fidelity and Deposit Company of Maryland (Fidelity), the surety, on a complaint arising out of a public works contract. The primary issue presented by this appeal is whether the trial court properly determined a "pay when paid" clause was enforceable

against Capitol, the subcontractor. On June 3, 1997, this court filed an unpublished opinion affirming the judgment. On June 30, 1997, on our own motion, we granted a rehearing to allow the parties to brief the effect, if any, of the Supreme Court's June 26, 1997, decision in *Wm. R. Clarke Corp.* v. *Safeco Ins. Co.* (1997) 15 Cal.4th 882, 888-897 [64 Cal.Rptr.2d 578, 938 P.2d 372], on this case. On rehearing, contrary to the arguments posited by the general contractor, Mega, we conclude the June 26, 1997, *Wm. R. Clarke Corp.* decision applies to a public works project where there is no pending action against the governmental entity.[1] Hence, we reverse.

## II. BACKGROUND

The complaint was filed on June 23, 1992, and named as defendants Mega, Fidelity, and the Long Beach Unified School District (the district). Plaintiff asserted causes of action for breach of contract, public works stop notice, and statutory payment bond. The district was merely a stakeholder and has since been dismissed from the action. The complaint alleged, prior to November 5, 1990, Mega and the district entered into the prime contract for the construction of the project known as the New Avalon School Gymnasium on Catalina Island. On November 5, 1990, Capitol and Mega entered into a written subcontract which was subsequently modified. Under the terms of the subcontract, Capitol was to supply Mega with structural steel fabrication, erection labor services, and equipment and material for the project. Mega obtained a bond to secure payment for laborers, material suppliers, and other persons from Fidelity. The prime contract was between the district and Mega. Capitol claimed it performed all terms of the subcontract as modified by the parties. However, Capitol argued Mega failed to pay the amount due under the subcontract. Capitol alleged it had been damaged in the amount of $33,716.50 plus interest from January 27, 1992, and attorney's fees. Plaintiff served a stop notice on May 21, 1992. Defendants answered the complaint. Mega asserted among other defenses backcharges and offsets for allegedly defective workmanship.

The dispute proceeded to trial on April 14, 1995. The parties agreed to have the matter tried on certain stipulated facts subject to briefing and oral argument. The parties stipulated to the following facts. The subcontract was entered into on November 5, 1990. Capitol performed work on the project and was in the class of beneficiaries under the payment bond issued pursuant

---

[1]Because the issue is not briefed nor pertinent to the present case, we do not address the question of the effect of the *Wm. R. Clarke Corp.* decision when a public entity is a party to the litigation.

to Civil Code section 3247.[2] The amount of retention on the original subcontract and signed change orders earned by Capitol and unpaid by Mega as of the date the complaint was filed, June 23, 1992, was $22,575. As of June 23, 1992, the date the complaint was filed, Capitol performed all work required under the modified subcontract. Mega paid for all work performed by Capitol except: (1) retention; (2) certain extra work claims totaling $11,141; and (3) certain backcharge and offset claims made by Mega. It was stipulated Mega was no longer asserting backcharge and offset claims. Capitol properly served a timely stop notice in the amount of $33,716.50. The district withheld $42,145.63 pursuant to Capitol's stop notice.

On January 18, 1993, Mega filed a claim under Government Code section 900 et seq. with the district for $652,011.39 plus interests and costs. The claim was also for work which Mega, the general contractor, contended it or its subcontractors had performed on the project. On May 28, 1993, Mega filed a complaint against the district which was settled in February 1995. On March 1, 1995, Mega, the general contractor, paid $33,716.50 to Capitol, the subcontractor. This was in exchange for Capitol's execution and delivery to Mega of a release of the stop notice. The payment was made without prejudice to claims by Capitol, the subcontractor, that there were additional monies due to it which Mega, the general contractor, denied and disputed. As of the date of the "Stipulation of Facts" in the present case, April 28, 1995, the district had not paid Mega the amount due under the settlement agreement. The parties further stipulated that the prevailing party would be entitled to recover reasonable attorney's fees and costs.

Capitol argued it was entitled to unpaid interest and attorney's fees totaling $25,343.89. This was because the March 1, 1995, payment of $33,716.50 was allocated to satisfy accrued interest of $9,274.21 and attorney's fees and costs of $16,069.18, leaving an $8,373.11 balance for allocation to principal. The interest was due on the amount which Capitol recovered as liquidated damages, $33,716.50, from the date they became due pursuant to section 3287. This was because, when Mega paid Capitol the entire contract retention amount and abandoned the claims for an offset, such constituted an admission of the lack of merit in the backcharges. Capitol also contended its claims were capable of being made certain with reliance only on documents that existed as of January 27, 1992. Capitol further asserted it was entitled to recover on the bond pursuant to section 3226 because the only conditions for recovery on the payment bond are that the claimant is one of the class identified in section 3110 and is unpaid.

Mega contended it was not required to pay the additional amount because there are three "pay when paid" clauses in the contract between the parties.

---

[2]All further statutory references are to the Civil Code unless otherwise indicated.

The first two clauses are in section 4 of the payment schedule as modified in paragraph 9 of rider 2 and state: "CONTRACTOR agrees to pay SUBCONTRACTOR in monthly payments of 90% of labor and materials which have been placed in position as condition precedent and for which payment has been made by OWNER to CONTRACTOR.[3] The remaining 10% shall be retained by CONTRACTOR until he receives final payment from OWNER, but not less than thirty-five days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered and accepted by OWNER, ARCHITECT, and CONTRACTOR. Subject to the provisions of the next sentence, the retained percentage shall be paid SUBCONTRACTOR promptly after CONTRACTOR receives his final payment from OWNER. SUBCONTRACTOR agrees to furnish, if and when required by CONTRACTOR, payroll affidavits, receipts, vouchers, releases of claims for labor, material and subcontractors performing work or furnishing materials under this Agreement, all in form satisfactory to CONTRACTOR, and it is agreed that no payment hereunder shall be made, except at CONTRACTOR's option, until and unless such payroll affidavits, receipts, vouchers or releases, or any or all of them, have been furnished. Any payment made hereunder prior to completion and acceptance of the work, as referred to above, shall not be construed as evidence of acceptance of any part of SUBCONTRACTOR's work." The third clause is in section E of the general subcontract which provides in part: "Under no conditions shall SUBCONTRACTOR make any changes either as additions or deductions without the written order of the CONTRACTOR and CONTRACTOR shall not pay any extra charges made by the SUBCONTRACTOR that have not been agreed upon in writing by CONTRACTOR, and in no event, shall CONTRACTOR make payment for any such extra charges unless and until the CONTRACTOR itself receives payment from OWNER. . . ." Mega argued the clauses were enforceable because the complaint alleged approximately $11,000 in extra charges which the district disputed among other things. According to Mega, Capitol did not have the right to receive any interest. Rather, it was only required to pay Capitol after Mega received payment from the district. Mega had not received the payment from the district for the alleged extra work or the retention claimed by Capitol. Hence, Mega argued Capitol was paid prior to the condition precedent occurring; i.e., Mega paid before it was compensated by the district.

Capitol countered the "pay when paid" clause was unenforceable because such provisions are null and void under section 3262, subdivision (a) which

---

[3]It is not clear from the rider whether the clause should read "placed in position as condition precedent and for which payment" or "placed in position and as condition precedent."

provides in part: "Neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice except by their written consent, and any term of the contract to that effect shall be null and void. Any written consent given by any claimant pursuant to this subdivision shall be null, void, and unenforceable unless and until the claimant executes and delivers a waiver and release." Capitol argued the condition precedent and "pay when paid" language in the subcontract affected and impaired its rights as a subcontractor regarding the stop notice and bond claims. Capitol argued the language in the subcontract does not conform to statutory waiver and release requirements contained in section 3262, subdivision (d). This specific contention was raised in the trial court.

Mega also asserted the entire payment of $33,716.50 must be allocated to principal. Mega further argued Capitol waived all right to claim interest by accepting the whole principal amount pursuant to section 3290. Also, Mega argued Capitol waived all rights to recover for alleged extra work by executing a conditional waiver and release upon receiving a progress payment on April 10, 1992, which covered the period when the alleged extra work was completed. Capitol billed Mega for the last work on January 27, 1992. The waiver and release provided it covered "progress payment[s] for labor, services, equipment or material furnished to [Mega] through January 31, 1992 only and [did] not cover any retention or items furnished after said date." Capitol argued its conditional release was not a waiver of all its extra work claims. Also, Capitol contended Mega should be equitably estopped to assert the release was a waiver.

Both sides asserted they were entitled to attorney's fees and costs as the prevailing party. Capitol argued it was the prevailing party because it obtained greater relief under the contract given that Mega paid the entire amount due under the contract. According to Capitol, if the payment by the district "was truly a 'condition precedent' to [Mega's] obligation to pay, [Mega] would not yet have paid anything." Defendants countered they were the prevailing parties because the owner never paid Mega, therefore the payment never became due under the "pay when paid" clause of the subcontract.

The trial court found for Mega and Fidelity and entered judgment. The court made an award of attorney's fees and costs to defendants. In its statement of decision, the trial court determined the "pay when paid" clause was enforceable. As a result, the trial judge concluded Mega had no duty to pay Capitol until the district paid the general contractor. The court concluded

no interest accrued because Mega paid Capitol in full for retention and claimed extra work before receiving payment from the owner. The trial judge determined section 3262 did not affect the "pay when paid" clause because the null and void language of that statutory provision applied only to contracts between the owner and the original contractor.[4] The trial court concluded section 3262 did not apply to contracts between the original contractor and a subcontractor. The statutory form of waiver and release required in section 3262, subdivision (d), was applicable only under the described circumstances and those occasions involved execution of a waiver and release to induce a progress or final payment. The consent in this case was not given for that purpose. This timely appeal followed.

## III. Discussion

### A. *Standard of Review*

The interpretation of a written instrument is a judicial function which is exercised according to general canons of interpretation so that the purposes of the instrument are to be given effect. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], citing §§ 1635-1661 and Code Civ. Proc., §§ 1856-1866.) The Supreme Court has held: "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If the contract terms are ambiguous, the appellate court is bound by the findings of fact made on evidence which was introduced to aid in its interpretation. (*Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 294 [74 Cal.Rptr. 521, 449 P.2d 737], disapproved on another point in *Los Angeles County Metropolitan Transportation Authority* v. *Continental Development Corp.* (1997) 16 Cal.4th 694, 698-699 [66 Cal.Rptr.2d 630, 941 P.2d 809]; cf. *Parsons* v. *Bristol Development Co., supra*, 62 Cal.2d at p. 865.) Where the interpretation of the contract does not turn on credibility of extrinsic evidence, the appellate review is de novo. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; see *Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].) Contracts are construed as a whole. (*Nish Noroian Farms* v. *Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 735 [201 Cal.Rptr. 1, 677 P.2d 1170]; *Adkins* v. *Lear, Inc.* (1967) 67 Cal.2d 882, 905 [64 Cal.Rptr. 545, 435 P.2d 321];

---

[4]Because we conclude the present dispute is governed by *Wm. R. Clarke Corp.* v. *Safeco Ins. Co., supra*, 15 Cal.4th at pages 888-897, we do not address the trial judge's conclusion that section 3262 only applies to prime contracts between a contractor and an owner.

vacated on other grounds, *Lear, Inc.* v. *Adkins* (1969) 395 U.S. 653, 676 [89 S.Ct. 1902, 1914, 23 L.Ed.2d 610]; § 1641.)

## B. *The Subcontract Contained a "Pay When Paid" Clause*

We agree with the trial judge that the subcontract deferred payment to Capitol, the subcontractor, until Mega, the general contractor, was paid. Further, if Mega, the general contractor, were never paid, then no payments would ever be due to Capitol, the subcontractor and material supplier. Capitol's reliance on the substantial body of decisional and other authority relating to "pay when paid" clauses is unpersuasive. No doubt, there is a significant body of decisional authority which holds that unless there is a clear expression to the contrary, a "pay when paid" clause merely fixes a time for compensation. This body of law only permits payment to be delayed for a reasonable time after the completion of the work under the subcontract. (See *Byler* v. *Great American Insurance Company* (10th Cir. 1968) 395 F.2d 273, 276-277; *Dancy* v. *William J. Howard, Inc.* (7th Cir. 1961) 297 F.2d 686, 688-689; *Trinity Universal Insurance Company* v. *Smithwick* (8th Cir. 1955) 222 F.2d 16, 22-23; *F.W. Sims, Inc.,* v. *Federal Ins. Co.* (E.D.N.Y. 1992) 788 F.Supp. 149, 150-151; *Statesville Roofing & Heating Co., Inc.* v. *Duncan* (W.D.N.C. 1988) 702 F.Supp. 118, 119-122; *Aesco Steel, Inc.* v. *J.A. Jones Const. Co.* (E.D.La. 1985) 621 F.Supp. 1576, 1578-1580; *Havens Steel Co.* v. *Randolph Engineering Co.* (W.D.Mo. 1985) 613 F.Supp. 514, 539; *Seal Tite Corp.* v. *Ehret, Inc.* (D.N.J. 1984) 589 F.Supp. 701, 703-705; *Moore* v. *Continental Casualty Company* (W.D.Okla. 1973) 366 F.Supp. 954, 955-956; *Pioneer Roofing Co.* v. *Mardian Constr. Co.* (1986) 152 Ariz. 455 [733 P.2d 652, 666-667]; *Yamanishi* v. *Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457, 462-463 [105 Cal.Rptr. 580]; *DEC Elec., Inc.* v. *Raphael Const. Corp.* (Fla. 1990) 558 So.2d 427, 428-429; *Grady* v. *S. E. Gustafson Construction Company* (1960) 251 Iowa 1242 [103 N.W.2d 737, 738-739]; *Southern St. Masonry* v. *J.A. Jones Const.* (La. 1987) 507 So.2d 198, 199-206; *Atlantic States Construction Co.* v. *Drummond & Co.* (1968) 251 Md. 77 [246 A.2d 251, 252-255]; *Bayer & Mingolla* v. *A. J. Orlando Contracting* (1978) 6 Mass.App. 1 [370 N.E.2d 1381, 1382-1383]; *Mrozik Const.* v. *Lovering Associates* (Minn.Ct.App. 1990) 461 N.W.2d 49, 51-52; *American Drilling* v. *City of Springfield* (Mo.Ct.App. 1981) 614 S.W.2d 266, 273; *D. K. Meyer Corp.* v. *Bevco, Inc.* (1980) 206 Neb. 318 [292 N.W.2d 773, 775-777]; *Action Interiors* v. *Component Assembly* (1988) 144 A.D.2d 606 [535 N.Y.S.2d 55, 56]; *Howard-Green Elec. Co.* v. *Chaney & James Const. Co.* (1971) 12 N.C.App. 63 [182 S.E.2d 601, 603-604]; *Power & Pollution Svcs.* v. *Suburban Piping* (1991) 74 Ohio App.3d 89 [598 N.E.2d 69, 70-71]; *Mignot* v. *Parkhill* (1964) 237 Or. 450 [391 P.2d 755, 759-761]; *United Plate*

*Glass* v. *Metal Trims Ind.* (1987) 106 Pa. Commw. 22 [525 A.2d 468, 470-471]; *Koch* v. *Construction Technology, Inc.* (Tenn. 1996) 924 S.W.2d 68, 70-73; *Elk & Jacobs Drywall* v. *Town Contractors* (1976) 267 S.C. 412 [229 S.E.2d 260, 260-262]; *Sheldon L. Pollack Corp.* v. *Falcon Ind.* (Tex.Ct.App. 1990) 794 S.W.2d 380, 383-384; *Amelco Elec.* v. *Donald M. Drake Co.* (1978) 20 Wn.App. 899 [583 P.2d 648, 649-650]; *Riley Const.* v. *Schillmoeller & Krofl Co.* (1975) 70 Wis.2d 900 [236 N.W.2d 195, 198-200]; Rest.2d Contracts, § 227 & com. b, pp. 174-176.)

However, the present case involves a subcontract which unambiguously defers payment until there has been the transfer of moneys from the district to the general contractor, Mega. Further, if Mega, the general contractor, was not paid by the district, Capitol, the subcontractor, would never receive payment for work and materials. The first reference to deferred payment referred to: monthly payments; 90 percent of the total due under the terms of the contract; a condition precedent; and a requirement that payment be made to Mega by the district. (See p. 1054, *ante.*) This is not the only reference in the subcontract to deferred payment. The subcontract also explicitly states that payment of the 10 percent retention would be deferred until final payment by the owner. (See p. 1054, *ante.*) Finally, the extras provision of the subcontract also delays payment until the district has paid Mega. (See p. 1054, *ante.*) The subcontract refers on three occasions to the delay of payment until Mega has been paid by the district in terms of: the contract amount; the 10 percent retention; and extras. Taken as a whole (*Nish Noroian Farms* v. *Agricultural Labor Relations Bd.*, *supra*, 35 Cal.3d at p. 735; *Adkins* v. *Lear, Inc.*, *supra*, 67 Cal.2d at p. 905), those references require payment by the district to Mega before Capitol can be compensated for its services and materials. If Mega, the general contractor, were never paid, Capitol would be uncompensated. The authority set forth in the immediately preceding paragraph is therefore distinguishable and not controlling.

### C. *The "Pay When Paid" Clause Is Unenforceable*

The primary issue in this case is then whether the "pay when paid" clause is enforceable. In *Wm. R. Clarke Corp.* v. *Safeco Ins. Co.*, *supra*, 15 Cal.4th at page 886, the Supreme Court determined that a "pay if paid" provision in a construction subcontract was unenforceable as a violation of public policy. The Supreme Court stated: "We conclude that pay if paid provisions like the one at issue here are contrary to the public policy of this state and therefore unenforceable because they effect an impermissible indirect waiver or forfeiture of the subcontractors' constitutionally protected mechanic's lien rights in the event of nonpayment by the owner. Because they are unenforceable, pay if paid provisions in construction subcontracts do not insulate

either general contractors or their payment bond sureties from their contractual obligations to pay subcontractors for work performed." (*Ibid.*) *Wm. R. Clarke Corp.* noted that the rights of laborers and material suppliers are constitutionally protected under article XIV, section 3 of the California Constitution, which states: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (*Wm. R. Clarke Corp.* v. *Safeco Ins. Co., supra,* at pp. 888-889.) *Wm. R. Clarke Corp.* explained: " 'The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." [Citation.]' [Citation.]" (*Id.* at p. 889.)

*Wm. R. Clarke Corp.* also emphasized the limited circumstances under which a subcontractor could waive mechanic's lien rights which are codified in section 3262, subdivision (a), which provides: "Neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice except by their written consent, and any term of the contract to that effect shall be null and void. Any written consent given by any claimant pursuant to this subdivision shall be null, void, and unenforceable unless and until the claimant executes and delivers a waiver and release. Such a waiver and release shall be binding and effective to release the owner, construction lender, and surety on a payment bond from claims and liens only if the waiver and release follows substantially one of the forms set forth in this section and is signed by the claimant or his or her authorized agent, and, in the case of a conditional release, there is evidence of payment to the claimant. Evidence of payment may be by the claimant's endorsement on a single or joint payee check which has been paid by the bank upon which it was drawn or by written acknowledgment of payment given by the claimant." The written consent must be in the form of a waiver and release. (§ 3262, subd. (d).) The Supreme Court delineated the circumstances where lien rights would be waived as follows: "(1) a conditional waiver and release upon progress payment; (2) an unconditional waiver and release upon progress payment; (3) a conditional waiver and release upon final payment; and (4) an unconditional waiver and release upon final payment. Thus, under our mechanic's lien law, waiver and release of mechanic's lien rights is permitted only in conjunction with payment, or a promise of payment, and a conditional release is effective only if the claimant is actually paid. [Citation.]" (*Wm. R. Clarke Corp.* v. *Safeco Ins. Co., supra,* 15 Cal.4th at p. 889.)

The Supreme Court further rejected the argument that because the pay if paid clause was not "precisely" a waiver, it was not subject to section 3262. The Supreme Court concluded such clauses are void. The Supreme Court held: "The Legislature's carefully articulated anti-waiver scheme would amount to little if parties to construction contracts could circumvent it by means of pay if paid provisions having effects indistinguishable from waivers prohibited under Civil Code section 3262." (15 Cal.4th at p. 890.)

In their letter briefs, the parties dispute whether *Wm. R. Clarke Corp.* should be applied to this case. Capitol, the subcontractor, of course, contends it does. Mega, the general contractor, asserts *Wm. R. Clarke Corp.* is distinguishable from the case at bench and should be limited to the specific clause at issue. Mega's principal argument is that *Wm. R. Clarke Corp.* involved a private work of improvement, which is protected under California Constitution, article XIV, section 3, and no constitutional right is involved in this case, which involves a project funded by the public sector.[5]

Mega argues *Wm. R. Clarke Corp.* should be limited to its facts and is only applicable to private works cases. However, Mega has not cited any authority which establishes that subcontractors on public work projects are not protected by the anti-waiver provisions of section 3262. Rather, the distinction between public and private works is due to the principle of sovereign immunity which precludes recordation of mechanic's liens on public works. (§ 3109; *Pacific Employers Ins. Co.* v. *State of California* (1970) 3 Cal.3d 573, 576 [91 Cal.Rptr. 273, 477 P.2d 129]; *Miles* v. *Ryan* (1916) 172 Cal. 205, 207 [157 P. 5]; *Sukut-Coulson, Inc.* v. *Allied Canon Co.* (1978) 85 Cal.App.3d 648, 654 [149 Cal.Rptr. 711].) Subcontractors and material suppliers on public improvement projects, such as Capitol, have as remedies stop notices (§§ 3179-3214) and actions on payment bonds. (§§ 3247-3252.) Under the payment bond provisions, it must inure to the benefit of all persons named in section 3181. The persons listed in section 3181, which pursuant to section 3110 includes subcontractors and material suppliers like Capitol, have a right of action on the payment bond. (§ 3248, subd. (c).)

Thus, the real issue posited by Mega is whether the pay when paid provision in this case remains enforceable because, due to the principle of sovereign immunity, laborers and material suppliers on public works are protected in the stop notice and public payment bond statutes rather than by a mechanic's lien under the California Constitution. ■ The purposes of

[5]The parties do not dispute that the deferred payment language in the subcontract at issue has the same potential legal effect as a "pay if paid" clause as discussed in *Wm. R. Clarke Corp.*

the stop notice remedy include: to protect subcontractors against defaulting contractors by ensuring payment of moneys due under subcontracts (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728, 735 [40 Cal.Rptr. 85, 394 P.2d 829]; *United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226, 230-231 [22 Cal.Rptr. 907]); to solve the problem created by a senior foreclosure which destroys the value of a junior mechanic's lien (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 809 [132 Cal.Rptr. 477, 553 P.2d 637]; *Mechanical Wholesale Corp.* v. *Fuji Bank, Ltd.* (1996) 42 Cal.App.4th 1647, 1659 [50 Cal.Rptr.2d 466]); and to permit a subcontractor to bring an action against the owner and the original contractor to enforce the stop notice. (§ 3210.) The purposes of the public works payment bond include: providing material suppliers and subcontractors an additional means of compensation (*Department of Industrial Relations* v. *Seaboard Surety Co.* (1996) 50 Cal.App.4th 1501, 1508 [58 Cal.Rptr.2d 532]; *Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 344 [22 Cal.Rptr. 373]); being a substitute for the mechanic's lien remedy (*A.J. Setting Co.* v. *Trustees of Cal. State University & Colleges* (1981) 119 Cal.App.3d 374, 381 [174 Cal.Rptr. 43]; *Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc.* (1971) 18 Cal.App.3d 54, 60-61 [95 Cal.Rptr. 673]); and creating a primary obligation by the surety whose liability is independent of a contractual relationship with the subcontractor or material supplier. (*Department of Industrial Relations* v. *Seaboard Surety Co., supra,* 50 Cal.App.4th at p. 1508; *Sukut-Coulson, Inc.* v. *Allied Canon Co., supra,* 85 Cal.App.3d at pp. 654-655.) The stop notice and payment bond remedies are cumulative. (*Department of Industrial Relations* v. *Seaboard Surety Co., supra,* 50 Cal.App.4th at p. 1508; *Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc., supra,* 18 Cal.App.3d at p. 61.)

 The Supreme Court has analyzed the various remedies available in the private and public works context as follows: "Both laws deal with the same specific subject, and are to be construed together. The legislature did not intend to defeat or embarrass the right of a lien claimant by the remedies prescribed, but meant to broaden his remedy. Two remedies pointing to the same result being open to the claimant, he may pursue either as his interest will be best served. A provision inserted in the bond by the surety, as here, in an attempt to limit the remedy a mechanic or materialman may choose to elect, would be ineffectual as an invasion of his statutory rights to adopt the remedy provided by law in a proceeding in which liberality of construction is favored." (*Globe Indemnity Co.* v. *Hanify* (1933) 217 Cal. 721, 730 [20 P.2d 689].)

Given this authority, there is no practical effect between the results in this case and in *Wm. R. Clarke Corp.* Here, as in *Wm. R. Clarke Corp.*, enforcing

a true condition precedent against a subcontractor in a public works project might result in the forfeiture of all rights to payment for work performed. Moreover, as noted above, *Wm. R. Clarke Corp.* was based in part on the conclusion that there was a strong public policy underlying the anti-waiver provisions of the mechanic's liens, stop notice, and payment bond laws, all of which are embodied in section 3262. Mega has not cited any authority to support its implicit contention that the protections in section 3262 are limited by statute or decisional law to private work contracts. The express language in the relevant statute, section 3262, subdivision (a), contains no such limitation. Because the mechanic's lien, the stop notice, and payment bond statutes are remedial in nature (*Wm. R. Clarke Corp.* v. *Safeco Ins. Co.*, *supra*, 15 Cal.4th at p. 889 [mechanic's lien]; *Winick Corp.* v. *General Ins. Co.* (1986) 187 Cal.App.3d 142, 146 [231 Cal.Rptr. 606] [stop notice]; see *Department of Industrial Relations* v. *Seaboard Surety Co*, *supra*, 50 Cal.App.4th at p. 1508 [payment bond]) and are meant to protect the subcontractors from defaulting contractors, there is no reason to conclude that a true pay when paid condition precedent clause is enforceable in a public works subcontract but not a private sector project. Accordingly, we conclude the general contractor's liability to its subcontractor for work performed on a public works project may not be made contingent on the governmental entity's payment to the general contractor in a factual scenario such as is present in this case. Mega was liable to Capitol for the work it performed on the project as was the surety, Fidelity.

. . . . . . . . . . . . . . . . . . . . . . . . . .*

## IV. DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Plaintiff, Capitol Steel Fabricators, Inc., is to recover its costs on appeal from defendants, Mega Construction Co., Inc., and Fidelity and Deposit Company of Maryland.

Grignon, J., and Godoy Perez, J., concurred.

---

*See footnote, *ante*, page 1049.