*Supp. 3 Opinion
KOPP, J.
Gary Rossetto, James T. Walch, Amy K. Walch (hereinafter respondents), and Oscar Bazan entered into a “Memorandum of Agreement Between Tenants In Common” (hereinafter 1985 Agreement) on November 11, 1985, respecting the purchase on that date of property at 2411 Carlmont Drive in Belmont, California as tenants in common. The term of the agreement was three years, subject to sooner termination or renewal by consent of all parties. The purpose was “to set forth the respective rights, duties and obligations of the Parties concerning the operation and management of the Property for their mutual benefit and to do all things related to, incidental to, or in furtherance thereof.”
Paragraph 2.02 of the 1985 Agreement stated that so long as the property was “occupied” by Bazan, he would “timely pay all obligations on the first note and deed of trust, association fees, insurance and maintenance,” and that if Bazan did not occupy the property, he would still be responsible for such obligations. Paragraph 2.02 further declared that the “monthly profit or loss from the rental of said Property” (italics added) would be Bazan’s “exclusively.” Paragraph 4.01 required unanimous consent of each party to sublease all or part of the property to any person not a party to the agreement. In paragraph 7.02, each party waived the right to a judicial partition of the property.
No written renewal or termination of the 1985 Agreement occurred. On or about October 7, 1993, Bazan transferred by a “Supplemental Agreement” his interest in the property to Regina Ann Barross (hereinafter appellant). She agreed to assume all “payments on debt service, association fees, insurance, and maintenance” as specified in paragraph 2.02 of the 1985 Agreement. (Failure by appellant to make such payments “without good cause” would result in forfeiture of her entire interest to Bazan and refund by Bazan of appellant’s $20,000 purchase deposit.)
Respondents also signed the Supplemental Agreement, which provided that it would remain in effect until refinancing removed Bazan as a debtor or until sale of the property or payment in full of the mortgage, and thereafter for an additional three years. By its terms, the Supplemental Agreement could not be recorded and in paragraph 3, Bazan expressly assigned to appellant his rights under paragraph 2.02 of the 1985 Agreement and “specifically the rights [sic] to occupy or rent.” (Italics added.)
On June 26, 1995, appellant signed an “Addendum” to the prior two agreements, amending paragraph 2.02 of the 1985 agreement to declare that *Supp. 4 appellant “or whoever shall be entitled to possession of the Property, shall pay all real property taxes on said property.” (Italics added.) The Addendum could not be recorded.
In all three documents, the parties, including appellant, waived their right to invoke the rule that any ambiguity in an agreement will be construed against the party whose attorney prepared the agreement. (The 1985 Agreement was initially prepared by an attorney for Bazan, and the Addendum was initially prepared by appellant’s attorney, but all parties acknowledged the opportunity for review of each such agreement by their own attorneys.)
Appellant thereafter failed to pay association dues, property taxes and mortgage payments. In December 1999, respondents commenced an unlawful detainer action against appellant to recover possession and monetary damages for the payments owed by appellant. At trial, the parties stipulated that appellant exercised exclusive possession of the property, that respondents as cotenants could not enter the premises, and that appellant was obligated to pay the expenses described in the agreements.
The trial court granted respondents judgment for possession of the premises, finding a landlord-tenant relationship existed between respondents and appellant, and thereafter rendered judgment against appellant for unpaid rent in the amount of $7,528.67. Appellant’s motion for a new trial was denied. The appeal at bar followed.
Because of the attenuated housing supply in much of California and increasing tenancy in common collaboration by aspiring homeowners, the question presented to the court involves a legal issue of continuing public interest. No exact decisional law on the facts of the case exist. The agreements are “orphan instruments” in terms of appellate precedent. The parties dispute the proper remedy for appellant’s admitted failures to perform. Appellant claims that no landlord-tenant relationship was created by the agreements, that she was a buyer in possession who could "not be removed from possession by an unlawful detainer action, and that respondents’ remedy is breach of contract damage.
The question thus presented constitutes a question of law, namely, interpretation of the 1985 Agreement and its two successors. As such, we review the issue de novo, evoking an independent determination of the meaning of the 1985 Agreement and without compulsion (as respondents assert) to accept any reasonable interpretation of the trial court. (Capitol Steel Fabricators, Inc. v. Mega Construction Co. (1997) 58 Cal.App.4th 1049, 1056 [68 Cal.Rptr.2d 672].) Unlike Golden West Baseball Co. v. City *Supp. 5 of Anaheim (1994) 25 Cal.App.4th 11, 21 [31 Cal.Rptr.2d 378], in which a “great quantity” of extrinsic evidence was admitted to determine the intent of parties disputing the meaning of an alleged leasehold contract, no extrinsic evidence, except three stipulations, was presented to the trial court.[1] This court must, therefore, analyze the agreements and stipulated facts to ascertain the objective intent of the parties. It is implicitly conceded by the parties that cotenants may contract for one cotenant to occupy premises as a lessee of the other(s). (Cf. Spahn v. Spahn (1945) 70 Cal.App.2d, 791, 801-802 [162 P.2d 53].) A lease describes the premises, parties, rent and term. The parties and premises are here undisputed. The existence of term and rent provisions are disputed.
One of the stipulated facts was that appellant enjoyed exclusive possession of the premises, a strong indicator of her lessee status arising from paragraph 2.02 of the 1985 Agreement. As stated in Howard v. County of Amador (1990) 220 Cal.App.3d 962, 972 [269 Cal.Rptr. 807]: “The distinguishing characteristics of a leasehold estate are that the lease gives the lessee the exclusive possession of the premises against all the world, including the owner [citation], and its term is limited to endure for a definite and ascertained period, however short or long the period may be. [Citation.]”
Paragraph 2.02 of the 1985 Agreement also granted “monthly profit or loss from the rental of said property” (italics added) to appellant’s predecessor in interest exclusively, thus implying appellant’s predecessor could rent the premises to a sublessee. Paragraph 4.01 declares that “subleasing” must be approved by all parties, further indicating the existence of a lease in the first instance. In paragraph 7.09, the parties waived partition, an owner’s right, not one afforded a landlord or tenant. Additionally, paragraph 3 of the Addendum specifically assigned appellant her predecessor’s rights to “occupy or rent.” Furthermore, a lease agreement, unlike a transfer of a real property ownership interest, customarily will not be recorded. Both the Supplemental Agreement transferring to appellant her predecessor’s interest and the Addendum bar recording of the respective documents.
Rent may not necessarily be a single specific dollar amount. It consists even of services. (See Karz v. Mecham (1981) 120 Cal.App.3d Supp. 1, 4 [174 Cal.Rptr. 310].) Since 1970, Civil Code section 1951 provides that “rent” includes charges equivalent to rent. While the verb “includes” is not dispositive of the facts herein, contemporaneous with enactment of section 1951, the California Law Revision Commission noted concerning section 1951 that “rent” includes “all charges or expenses to be met or defrayed by *Supp. 6 the lessee in exchange for use of the leased property” and referred expressly to á promise by a lessee to pay taxes or fire, earthquake or liability insurance on leased premises. (Cal. Law Revision Com. com., 10 West’s Ann. Civ. Code (1985 ed.) foll. § 1951, p. 353.) That an arithmetic calculation was required to establish appellant’s rent does not defeat respondents’ unlawful detainer action.
Nor is the lack of a specific leasehold term in the Supplemental Agreement fatal to respondents. Termination of the term contained in the 1985 Agreement transformed the three-year tenancy into a month-to-month relationship. (See Dover Mobile Estates v. Fiber Form Products, Inc. (1990) 220 Cal.App.3d 1494, 1501 [270 Cal.Rptr. 183].) Upon expiration of the three-year term of the 1985 Agreement, appellant’s predecessor became a tenant at will or by sufferance. (Vucinich v. Gordon (1942) 51 Cal.App.2d 434, 436 [124 P.2d 868].) As in Vucinich, appellant, after acquiring her ownership interest in October 1993, occupied the premises as a tenant, not merely as a co-owner. In sum, a single writing (the 1985 Agreement) created both a tenancy in common and a lease between three of the cotenants as lessors (respondents) and the fourth cotenant as lessee (appellant’s predecessor in interest).
Respondents were also entitled to recover damages incidental to obtaining possession of the premises. (Haig v. Hogan (1947) 82 Cal.App.2d 876, 878 [187 P.2d 426]; Stockton Morris Plan Co. v. Carpenter (1936) 18 Cal.App.2d 205, 210 [63 P.2d 859].) Damages consisted of mortgage payments, property taxes and association dues. Because those obligations comprised part of the rent, the judgment of the trial court properly included them.
Appellant’s motion for a new trial claimed that the trial court’s decision was “contrary to law” because no landlord-tenant relationship existed and adduced estoppel, waiver, lack of jurisdiction and breach of fiduciary duty as additional defenses. Filing a declaration under penalty of perjury to support her motion, appellant also asserted for the first time that respondent Rossetto had assured her she could remain in possession pending sale of the property and without paying the mortgage. The trial court is limited by a motion for new trial to the evidence presented at trial. Appellant’s declaration contained no showing to qualify such assertion as newly discovered evidence, nor did she so argue in her supporting points and authorities. The ground itself is not favored as a matter of law. (Langdon v. Langdon (1941) 47 Cal.App.2d 28, 33 [117 P.2d 371].) The trial court correctly disregarded appellant’s “new” evidence and defenses and denied the motion.
Appellant has also appealed from a separate trial court order awarding attorney’s fees to respondents in accordance with the 1985 Agreement. *Supp. 7 Since we affirm the trial court’s finding of a landlord-tenant relationship between respondents and appellant, and since the 1985 Agreement provided in paragraph 7.06 for entitlement to reasonable attorney’s fees if any party instituted action to “interpret or enforce the terms hereof,” no error was committed by the trial court in awarding attorney’s fees to respondents as prevailing parties in enforcing the leasehold relationship portions of the 1985 Agreement.
The judgments of the trial court are affirmed in all respects. Respondents shall recover their costs on appeal, including reasonable attorney’s fees as determined by this court.
Holm, P. J. and Pfeiffer, J. concurred.

Extrinsic evidence would have facilitated determination of the parties’ intent.