Filed 4/17/20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CROSNO CONSTRUCTION, INC., | D075561, D075562 |
| Cross-complainant and Respondent, | |
| v. | (Super. Ct. No. CIVDS1511273) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Cross-defendant and Appellant. | |

APPEALS from a judgment and postjudgment order of the Superior Court of San Bernardino County, Gilbert Ochoa, Judge.  Affirmed.

SMTD Law, Jonathan J. Dunn, Teresa L. Polk and Ravpreet K. Bhangoo for Defendant and Appellant.

Barnick | Hodges Law Corporation, John F. Hodges and Whitney Northington Barnick for Plaintiff and Respondent.

Rutan & Tucker, Paul Aherne and Alyssa Roy for Construction Employers' Association as Amicus Curiae on behalf of Defendant and Appellant.

Crawford & Bangs and E. Scott Holbrook, Jr. for American Subcontractors Association as Amicus Curiae on behalf of Plaintiff and Respondent.

North Edwards Water District (the District) selected Clark Bros., Inc. (Clark) as its general or direct contractor on a public works project to build an arsenic removal water treatment plant. Clark hired subcontractor Crosno Construction (Crosno) to build and coat two steel reservoir tanks. The subcontract contained a "pay-when-paid" provision that stated Clark would pay Crosno within a reasonable time of receiving payments from the District, but that this reasonable time "in no event shall be less than the time Contractor and Subcontractor require to pursue to conclusion their legal remedies against Owner or other responsible party to obtain payment . . . ." After Crosno completed most of its work, a dispute arose between the District and Clark halting the project. As Clark sued the District, Crosno sought to recover payments owed under the public works payment bond that Clark had obtained for the project.

This appeal involves Crosno's payment bond claim against the bond surety, Travelers Casualty and Surety Company of America (Travelers). At issue is whether the pay-when-paid provision in Crosno's subcontract precludes Crosno from recovering under the payment bond while Clark's lawsuit against the District remains pending. Relying on *Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882 (*Wm. R. Clarke*), the trial court found the pay-when-paid provision here unenforceable because it affects or impairs Crosno's payment bond rights in violation of Civil Code section 8122.[1] With the facts largely undisputed, the court granted Crosno's motion for summary judgment and entered judgment in its favor for principal due plus prejudgment interest.

---

1    Further statutory references are to the Civil Code unless otherwise indicated.

2

Travelers asserts the trial court misconstrued *Wm. R. Clarke* and erred in failing to enforce the pay-when-paid provision against the bond claim. After carefully considering the parties' arguments, we agree with the trial court's sound analysis. Enforcing the pay-when-paid provision found in Crosno's subcontract would postpone Crosno's right to recover under the payment bond for an indefinite time period until Clark's litigation against the District concludes. Such a result would unreasonably affect or impair Crosno's statutory payment bond remedy (§ 8122) and is unenforceable for the same reasons expressed in *Wm. R. Clarke*, *supra*, 15 Cal.4th 882. Because Travelers may not invoke this particular pay-when-paid provision as a defense to payment bond liability, we affirm the judgment. Travelers raises no separate argument as to the postjudgment award of attorney's fees; accordingly, we likewise affirm that order.

FACTUAL AND PROCEDURAL BACKGROUND

The District sought lump sum bids for a public water system improvement project funded by the State. The specifications required general contractors submitting bids to secure a payment bond providing coverage if it or any of its subcontractors failed to make payments due. Clark obtained a public works payment bond from Travelers to secure the payment of subcontractors and suppliers. As the surety, Travelers became obliged upon Clark's failure to make payments due. In addition, the payment bond covered reasonable attorney's fees. Clark listed Crosno as a subcontractor in its bid. The District selected Clark as its direct contractor (§ 8108).

Thereafter, Clark executed a subcontract agreement with Crosno. Crosno agreed to fabricate, erect, and coat two 250,000-gallon welded steel water reservoir tanks for the

3

sum of $630,000. Among other terms, the subcontract required Crosno to be paid for labor and material in monthly progress payments, subject to a retention, upon receipt of payments from the District.[2] Critical to this case, the subcontract further contained the following pay-when-paid provision in the event the District *delayed* making payments to Clark:

> "If Owner or other responsible party delays in making any payment to Contractor from which payment to Subcontractor is to be made, Contractor and its sureties shall have a reasonable time to make payment to Subcontractor. 'Reasonable time' shall be determined according to the relevant circumstances, but in no event shall be less than the time Contractor and Subcontractor require to pursue to conclusion their legal remedies against Owner or other responsible party to obtain payment, including (but not limited to) mechanics' lien remedies."

Crosno began work in March 2014. On November 6, it was ordered to halt work because a dispute had arisen between Clark and the District. By that point, Crosno had supplied and fabricated the steel, shop-primed the steel, transported the steel to the site,

---

[2] "Construction contracts often call for payment in installments—known commonly as progress payments—due when a project reaches various stages of completion. [Citation.] By arranging for progress payments, participants in a construction-related transaction build in an incentive for contractors to complete work and provide an owner some protection against the risk of nonperformance [citation], while permitting contractors to obtain an essential cash flow. As an additional hedge against nonperformance and incentive for completion, an owner may withhold a small percentage of the money due at each stage—typically 5 to 10 percent—until the project is finished. [Citations.] If the contractor defaults, or subcontractors assert mechanics liens for nonpayment, the owner can use this retention fund to make payment or seek substitute performance. [Citations.] Once work is done to the owner's satisfaction and the period for filing liens has expired, the owner will release the retention." (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1087−1088, fn. omitted (*United Riggers*).)

erected the two 250,000-gallon tanks, and almost completed field coating work. Most of the submitted invoices remained unpaid, with a total of $562,435 owed to Crosno for the work completed to that point.

The next day (November 7) Crosno filed a stop payment notice with the District. Two weeks later, Clark told Crosno the District had terminated its contract. This meant that Clark could not pay Crosno the $562,435 owed for completed work.

On December 18, 2014, Crosno gave Travelers a written notice of its claim under the payment bond. The following month, Travelers replied by letter rejecting the bond claim as premature. Invoking the pay-when-paid provision in Crosno's subcontract, Travelers asserted that no funds were due until Clark's then-pending lawsuit against the District concluded. Specifically, Travelers was referring to a lawsuit filed just days before in which Clark had sued the District for breach of contract, breach of implied warranty, and declaratory relief.[3]

Crosno initially filed suit in Kern County to recover the $562,435 due (No. S-1500-CV-284661). The first two causes of action, alleging breach of contract as to Clark and enforcement of the stop notice as to the District, are not relevant to this appeal. Crosno's third cause of action was against Travelers for recovery on the payment bond. Travelers filed an answer, asserting among its affirmative defenses any defense held by

[3]    Originally filed in Kern County in January 2015 (No. S-1500-CV-283924 SPC), Clark's action against the District was transferred to San Bernardino County and assigned a new case number (No. CIVDS1511273). In early 2016, Clark amended its complaint to add allegations and causes of action against the State of California, Water Resources Control Board.

bond principal Clark. Crosno's action was later transferred to San Bernardino County and consolidated for all purposes with Clark's pending action against the District.

Roughly a year later Crosno filed a motion for summary judgment or summary adjudication as to its payment bond cause of action against Travelers. It argued that the pay-when-paid provision in the subcontract was void and unenforceable because Crosno had never executed a waiver and release required under section 8122 to validly "waive, affect, or impair" its payment bond rights. It further asserted that Travelers could not rely on the subcontract provision given the independent nature of the payment bond remedy.

Opposing the motion, Travelers did not dispute the essential facts underlying Crosno's right to payment. It instead focused on the fact that litigation in Clark's lawsuit against the District remained pending. Travelers argued (as it does on appeal) that section 8122 was not implicated because the pay-when-paid clause simply set the time for payment and did not waive Crosno's bond rights. It further relied on suretyship principles to argue that the subcontract defined its obligation as surety under the payment bond.

The trial court granted Crosno's motion. In a detailed statement of decision, it explained that although the payment clause in the subcontract was a "pay-when-paid" provision, rather than a "pay-if-paid" provision, the question remained whether applying the provision would impermissibly affect or impair Crosno's statutory payment bond

rights under the antiwaiver statute, section 8122.[4]  Based on *Wm. R. Clarke* and other authorities, the court found the pay-when-paid provision void because it violated the policies underlying section 8122.  Accordingly, it awarded judgment in favor of Crosno against Travelers of $562,435, while staying enforcement of its ruling for 60 days to allow settlement.

After the ruling, Crosno filed a motion for prejudgment interest (§ 3287, subd. (a)).  Crosno urged the court to assess statutory prejudgment interest from December 18, 2014, the date that it submitted its payment bond claim to Travelers.  Accepting Crosno's claim, in August 2017 the court entered judgment in favor of Crosno against Travelers for $562,435 in principal, together with 10 percent prejudgment interest from December 18, 2014.  Travelers appealed the judgment.

Meanwhile, Clark, Crosno, and other entities continued settlement negotiations in Clark's still-pending action against the District.  The District interpleaded funds to satisfy the outstanding principal judgment in favor of Crosno on its bond claim.  Crosno later requested and received an award of $22,500 from Travelers in attorney's fees.  Travelers filed a second notice of appeal from that postjudgment attorney's fee award.  The two appeals were consolidated.  Because the judgment itself has since been satisfied, Travelers's appeal concerns its liability for prejudgment interest and attorney's fees under the payment bond.

---

4    The remedial scheme for payment in public works projects and the trial court's ruling are detailed in the discussion.

DISCUSSION

The central question in this appeal is whether a surety may defend a public works payment bond action by invoking an expansive "pay-when-paid" provision in the construction subcontract that defers payment for an indefinite period of time. Specifically, may a payment bond surety turn to a "pay-when-paid" provision in a subcontract to delay its bond obligation to a subcontractor until some unspecified point at which litigation between the direct contractor and project owner concludes? The trial court rejected that argument on summary judgment, applying the reasoning in *Wm. R. Clarke* to find the specific pay-when-paid provision at issue unenforceable. Applying de novo review to this question of law on undisputed facts, we agree with the trial court's reasoning and affirm both the judgment and the postjudgment order.

1.      *Legal Framework*

      a.      *Statutory Payment Remedies for Construction Projects*

The right to a mechanics lien derives from California's constitution. "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) Thus, "[a] mechanics lien gives a claimant (e.g., a contractor, supplier, or laborer) a real property security interest in a private work of improvement to secure the right to be paid for work and material." (4 Witkin, Summary of Cal. Law (11th ed. 2017) Security Transactions in Real Property, § 27, p. 820.) A lien claim is enforced by service, recordation, and

8

foreclosure. (*Ibid.*) Because they are constitutionally derived, statutes governing liens and other relief are remedial in nature and liberally construed. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 889.)

Part 6 of division 4 of the Civil Code (§§ 8000−9566) lays out a comprehensive statutory scheme to resolve payment disputes in construction projects. Different remedies are available in public versus private construction projects. (Compare § 8160 et seq. with § 9000 et seq.) Sovereign immunity principles prevent mechanics liens from being asserted on public works projects. (*N.V. Heathorn*, *Inc. v. County of San Mateo* (2005) 126 Cal.App.4th 1526, 1535; *Liton Gen. Engineering Contractor*, *Inc. v. United Pacific Insurance* (1993) 16 Cal.App.4th 577, 584 (*Liton*).) Accordingly, the principal statutory remedies for claimants who have furnished labor, services, equipment, or material on a public works project are stop payment notices and payment bonds. (§ 9100, subd. (a)(1).) Nevertheless, the statutes dealing with both private and public works "deal with the same specific subject, and are to be construed together." (*Globe Indemnity Co. v. Hanify* (1933) 217 Cal. 721, 730, accord *Capitol Steel Fabricators*, *Inc. v. Mega Const. Co.* (1997) 58 Cal.App.4th 1049, 1061 (*Capitol Steel*).)

A stop payment notice notifies a project owner (here, the District) to withhold funds due to the direct contractor sufficient to satisfy the amount of the stop notice claim, plus reasonable litigation costs. (§ 9358; see generally, §§ 9350−9510.) A payment bond "guarantees payment to claimants on a construction project to the extent they are not otherwise paid." (4 Witkin, Summary of Cal. Law (11th ed. 2017) Security Transactions

9

in Real Property, § 27, p. 820; see generally, §§ 9550−9566.) This appeal turns on Crosno's payment bond action against Travelers, so we focus on those statutes.

As the entity that has a direct contractual relationship with the project owner, Clark is a "direct contractor." (§ 8018.) Every direct contractor awarded a public works contract in excess of $25,000 must, before beginning the work, provide a payment bond to the public entity. (§ 9550, subd. (a).) "In addition to protection of the public entity from liability for a defaulting contractor, the purpose of the surety bond is to provide a distinct remedy to public works subcontractors and suppliers of labor or materials to public works projects." (*Liton*, *supra*, 16 Cal.App.4th at p. 584.) If the direct contractor fails to satisfy its payment obligation to the subcontractor or supplier, the surety must do so. (§ 9554, subd. (b)(1).)

The statutory scheme carefully protects against the unfair or imprudent waiver of remedial rights. (See Cal. Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 4th. ed. 2019) § 4.11, p. 4-13.) Section 8122 provides:

> "An owner, direct contractor, or subcontractor may not, by contract or otherwise, waive, affect, or impair any other claimant's rights under this part, whether with or without notice, and any term of a contract that purports to do so is void and unenforceable unless and until the claimant executes and delivers a waiver and release under this article."

A claimant may waive its statutory remedies only by signing a written waiver and release. (Cal. Mechanics' Liens and Related Construction Remedies, *supra*, § 4.11, p. 4-13, discussing Civ. Code, § 8124.) The statutes permit four types of waivers: a conditional waiver and release upon progress payment (§ 8132); an unconditional waiver

10

and release upon progress payment (§ 8134); a conditional waiver and release upon final payment (§ 8136), and an unconditional waiver and release upon final payment (§ 8138). In other words, "waiver and release of [payment bond] rights is permitted only in conjunction with payment, or a promise of payment, and a conditional release is effective only if the claimant is actually paid." (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 889; see § 8124, subd. (b).)[5]

Enforcing these safeguards, section 8126 provides:

> "An oral or written statement purporting to waive, release, impair or otherwise adversely affect a lien or claim is void and unenforceable and does not create an estoppel or impairment of the lien or claim unless either of the following conditions is satisfied: [¶] (a) The statement is pursuant to a waiver and release under this article. [¶] (b) The claimant has actually received payment in full for the claim."

b.      *Defining a Surety's Payment Bond Obligation*

A surety bond is governed by general rules of contract interpretation—a court seeks to discover the parties' intent by examining bond language in its ordinary sense. (*Electrical Electronic Control, Inc. v. Los Angeles Unified School Dist.* (2005) 126 Cal.App.4th 601, 612.)  As the payment bond surety, Travelers's obligation "is measured by the terms of the bond and the statutes referenced in the bond." (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 893.)  Reflecting its remedial nature, a payment bond "shall be construed

---

5      *Wm. R. Clarke* relied on the prior statutes governing mechanics liens and related remedies (former § 3082 et seq, now § 8000 et seq.).  Effective January 1, 2012, those provisions have been relocated without substantive change to newly enacted Part 6 of Division 4 of the Civil Code.  (See 4 Witkin, Summary of Cal. Law (11th ed. 2017) Security Transactions in Real Property, § 27, p. 819.)

most strongly against the surety and in favor of all persons for whose benefit the bond is given."  (§ 8154, subd. (a).)  The sole conditions of recovery are that the person is an authorized claimant who has not been paid the claim in full.  (§ 8154, subd. (c).)

The payment bond at issue here is broadly worded.  It obligates Travelers to pay amounts due up to $6,143,863 with respect "to work or labor under the contract" between Clark and the District if Clark or its subcontractors failed to pay any person named in former section 3181, now section 9100.  That statute in turn lists among those eligible to file a stop payment notice or payment bond claim "[a] person that provides work for a public works contract, if the work is authorized by a direct contractor, subcontractor, architect, project manager, or other person having charge of all or part of the public works contract."  (§ 9100, subd. (a)(1).)  In other words, because Clark failed to pay Crosno for subcontracting work it completed on the District's public works project, Crosno is entitled to make a claim under the payment bond.

c.  *Application of Subcontract Payment Provisions to Bond Recovery*

*Wm. R. Clarke* confronted a then-emerging trend of general contractors inserting "pay if paid" provisions in their subcontract agreements.  (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885.)  "A pay if paid provision makes payment by the owner to the general contractor a condition precedent to the general contractor's obligation for work the

12

subcontractor has performed." (*Ibid.*)[6] The question before the court in *Wm. R. Clarke* was whether the surety could use such a provision as a defense against a subcontractor's action under the payment bond. Concluding it could not, the court explained that "pay if paid" provisions are unenforceable as contrary to public policy. (*Id.* at p. 886.) Such provisions effectively waive the subcontractor's mechanics lien rights, violating the antiwaiver provisions in section 8122. (*Ibid.*; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2019) ¶¶ 6:3580 to 6:3581.)

Following *Wm. R. Clarke*, an appellate court applied the same principles to preclude enforcement of a pay-if-paid provision in a public works project. (*Capitol Steel*, *supra*, 58 Cal.App.4th at p. 1062.)[7] As the *Capitol Steel* court concluded, "the general contractor's liability to its subcontractor for work performed on a public works project may not be made contingent on the governmental entity's payment to a general contractor . . . ." (*Ibid.*) "A contract provision that makes payment by the public entity to the

---

6      "In contract law, a 'condition precedent' is 'either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises.' " (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885, fn. 1.) The pay-if-paid provision in the *Wm. R. Clarke* subcontracts read:  " 'Receipt of funds by Contractor from Owner is a condition precedent to the Contractor's obligation to pay Subcontractor under this Agreement, regardless of the reason for Owner's nonpayment, whether attributable to the fault of the Owner, Contractor, Subcontractor or due to any other cause.' " (*Id.* at pp. 886−887 & fn. 3.) Each of the subcontracts also included an addendum reiterating the pay-if-paid clause and yet purporting to preserve the subcontractors' mechanics lien rights. (*Ibid.*)

7      The deferred payment language in *Capitol Steel* had the same effect as the "pay if paid" clause in *Wm. R. Clarke*, "unambiguously defer[ring] payment until there ha[d] been a transfer of moneys from the district to the general contractor." (*Capitol Steel*, *supra*, 58 Cal.App.4th at pp. 1058, 1060, fn. 5.)

contractor a condition precedent to the contractor's obligation to pay a subcontractor for its work—that is, a 'pay if paid' clause—is void as against public policy and unenforceable as a matter of law." (Cal. Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 2019) § 4.149, p. 4-105 [discussing *Capitol Steel*].)

This case considers the effect of a "pay-*when*-paid" provision in a construction subcontract. As distinguished from a pay-if-paid provision, a pay-when-paid provision is not a true condition precedent and instead "merely [fixes] the usual time for payment to the subcontractor, with the implied understanding that the subcontractor in any event has an unconditional right to payment within a *reasonable time*." (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885, italics added.) As an example of a pay-when-paid provision, *Wm. R. Clarke* cites *Yamanishi v. Bleily & Collishaw*, *Inc.* (1972) 29 Cal.App.3d 457 (*Yamanishi*), an older case with parallels to this appeal.

The subcontractor in *Yamanishi* helped construct a public park. A dispute arose between the city redevelopment agency and the direct contractor. (*Yamanishi*, *supra*, 29 Cal.App.3d at pp. 459, 461.) When the direct contractor later stopped paying its subcontractor, the subcontractor sued it and the bond surety to recover the balance due and attorney's fees. (*Id.* at p. 460.) The contractor and surety defended the claim by pointing to the subcontract, which stated the direct contractor would pay the subcontractor "upon receipt of each payment received from the Owner." (*Id.* at p. 461.) Relying on this subcontract language, the trial court ruled that until the "condition precedent" occurred, no payment obligation accrued. (*Id.* at p. 462.)

14

The appellate court reversed. As reasonably construed, this provision was not a condition precedent and merely provided the time in which the subcontractor would ordinarily be entitled to progress payment for its work. (*Yamanishi*, *supra*, 29 Cal.App.3d at pp. 462−463.) If the contractor was denied payment through no fault of the subcontractor, no specific time for payment was provided in the subcontract, and the default rule was that payment was due within a reasonable time upon the subcontractor's performance. (*Ibid.*) As the court explained, a contrary interpretation was unreasonable:

> "Defendants' interpretation of paragraph (r) would postpone payments earned by a subcontractor, itself without fault, until a dispute between the contractor and the owner is resolved, perhaps months or even years later. Indeed, it gives no reasonable assurance that such a dispute would ever be resolved. While the question is unsettled the contractor continues unobligated to the subcontractor. On the other hand, if the dispute be lost because of the contractor's fault, then surely the contractor must pay his subcontractor creditor from other funds; if won, he must apply all or a substantial part of the money he receives toward his subcontractual obligations. His interest would seem more likely to benefit from *avoidance* of any settlement with the owner. It is unlikely that such a result was intended by the contracting parties." (*Id.* at p. 463.)

In short, these cases lay out the broad framework for evaluating whether subcontract payment provisions unreasonably affect or impair a claimant's payment bond recovery. The subcontract between Crosno and Clark includes a slightly different payment timing provision than that found in *Wm. R. Clarke*, *Capitol Steel*, and *Yamanishi*. Nevertheless, as we explain below, the trial court properly extended the principles set forth in those cases to conclude that Travelers could not rely on the subcontract's definition of "reasonable time" to argue that no payment bond obligation accrued until Clark's litigation with the District concluded.

15

2.      *The Trial Court Properly Rejected Travelers's Defense.*

As the trial court found, and the parties do not dispute, the payment timing provision in Crosno's subcontract is a pay-*when*-paid provision.  Regardless of whether Clark is successful in its litigation with the District, it remains obligated to pay. The provision merely fixes the time upon which Clark's payment becomes due.  This distinguishes the facts from those in *Wm. R. Clarke* and *Capitol Steel*, where the subcontract provision set a condition precedent for a subcontractor's right to payment to accrue.

Under the subcontract, Clark was required to pay Crosno within 10 days after it received payment from the District.  If the District delayed paying Clark, Clark would have a reasonable time to pay, which "in no event" would be less than the time required "to pursue to conclusion [its] legal remedies against [the District]."   This latter clause distinguishes the facts here from the general contractor's argument in *Yamanishi*.  But the effect is the same:  "reasonable time" is defined to include an indefinite timeframe that *Yamanishi* held was *un*reasonable.  (*Yamanishi*, *supra*, 29 Cal.App.3d at pp. 462–463.)

California courts have yet to decide whether an expansive "pay-when-paid" subcontract provision similar to the one here can be invoked as a defense by a surety to a payment bond claim.  Extending the reasoning in *Wm. R. Clarke*, the trial court concluded that the provision was void and unenforceable because it impaired or affected Crosno's payment bond rights in violation of section 8122.  Even though the subcontract provision was not a pay-*if*-paid provision, the court reasoned that the same antiwaiver safeguards applied:

16

"The issue is whether application of the subcontract provision unreasonably affects or impairs right sunder the bond contrary to the policy of [Civil Code,] § 8122. In other words, whether under the circumstances and consideration of the policy underlying the *Wm. R. Clarke* and *Capitol Steel* decisions, the provision is void as applied to the surety's obligation under the bond.

"After considering the case law and arguments at [the] hearing, the court finds the provision void as a violation of the underlying public policy of the anti-waiver provision of [Civil Code,] § 8122. Section 8122 prohibits any provision of a contract that 'waive[s], affect[s], or impair[s] claimants rights,' unless such provision is accompanied by a valid release and waiver. To be valid, a release and waiver must be accompanied by payment. ([Civil Code,] § 8124.)

"Here, Crosno is being required to wait until the conclusion of litigation to proceed under the bond. There is no dispute that the provision in the subcontract being enforced by the surety is affecting and impairing Crosno's right to receive payment under the bond."

As the trial court explained, although a pay-when-paid provision might properly allow payment to be delayed for a *reasonable* period of time after completion of work, enforcing the provision here "does not provide for payment within a reasonable time."

We agree with the trial court's thoughtful analysis. If Travelers could invoke the subcontract's pay-when-paid clause to postpone its payment bond obligation until some unspecified and undefined point in time when Clark's litigation with the district concluded, that would unquestionably and unreasonably affect or impair Crosno's right to recover under the payment bond without either an express waiver or full payment required by sections 8124 and 8126. Accordingly, the specific pay-when-paid provision before us is "void and unenforceable" (§§ 8122, 8126) against Crosno's payment bond claim. It attempts to define as "reasonable" an indefinite time period already determined to be unreasonable in *Yamanishi*, *supra*, 29 Cal.App.3d 457. As the Supreme Court

17

explained in *Wm. R. Clarke*, "[t]he Legislature's carefully articulated anti-waiver scheme would amount to little if parties to construction contracts could circumvent it by means of pay if paid provisions having effects indistinguishable from waivers prohibited under Civil Code [former] section 3262 [, now section 8126]." (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 890.)

As the trial court observed, the purpose behind the public works payment bond is to provide subcontractors like Crosno " 'a quick, reliable and sufficient means of payment.' " (*Cooley v. Freeman* (1928) 204 Cal. 59, 62 (*Cooley*).) The filing deadlines for payment bond actions reflect this aim. An action against a surety on the payment bond must be filed within six months of when a stop notice may be filed (§ 9558), which in turn may be filed 90 days after cessation of work (§ 9356, subd. (b)). As Crosno suggests, enforcing the pay-when-paid clause as written could effectively nullify the bond whenever the direct contractor's litigation with the owner extended beyond the limitations period.[8] Indeed, relying on these same timing requirements, courts have refused to apply subcontract provisions in a manner that restricts statutory payment bond recovery. (*Pneucrete Corp. v. U.S. Fid. & Guarantee Co.* (1935) 7 Cal.App.2d 733, 740 [arbitration clause did not preclude bond claim] (*Pneucrete*); see also *United States ex rel Walton Technol., Inc. v. Weststar Eng'g, Inc.* (9th Cir. 2002) 290 F.3d 1199, 1208 [pay " 'when and if' " paid clause did not preclude federal claim under parallel Miller Act] (*Walton*).)

_____

8    For instance, at the time judgment was entered in Crosno's favor on the payment bond action, litigation between Clark and the District had been pending for two and a half years.

18

Travelers responds that statute of limitations concerns could be resolved by filing and immediately staying the payment bond action pending resolution of Clark's litigation against the District. Amicus curiae Construction Employers' Association (CEA) suggests that a payment bond action filed after Clark's litigation concludes could avail of equitable tolling to overcome a limitations bar. But as the American Subcontractors Association points out in its amicus curiae brief, either procedure delays the payment bond action for an indefinite period, thereby unreasonably affecting or impairing Crosno's payment bond rights in violation of section 8122. Open-ended delay likewise conflicts with the purpose behind the payment bond of providing subcontractors like Crosno an expedient means of recovery. (*Cooley*, *supra*, 204 Cal. at p. 62.)

Also supporting the trial court's view, section 8152, subdivision (d) prevents a surety from avoiding liability on a bond based on "[a] condition precedent or subsequent in the bond purporting to limit the right of recovery of a claimant otherwise entitled to recover pursuant to a contract, agreement, or bond." As the trial court explained,

> "If the provision at issue was included in the payment bond, there would be no dispute it would be unenforceable as against the policy underlying payment bonds. However, this is exactly the result of enforcement of the provision; it results in Crosno having to wait until legal remedies are pursued, albeit by Clark, until [it] can recover on the bond. *Travelers has effectively imposed an unreasonable limit on the terms of payment on the bond. It is seeking to do indirectly what it cannot do directly*."

Pursuant to section 8152, Travelers could not insert a condition in the bond limiting a subcontractor's bond recovery to those claims as to which litigation against the owner had concluded. It follows that Travelers may not indirectly achieve the same result by

19

applying the subcontract's definition of "reasonable time" to avoid its bond obligation while Clark's lawsuit against the District remained pending.

3.    *Travelers's Counterarguments Are Unpersuasive.*

Travelers and amicus curiae CEA raise four broad counterarguments as to why the pay-when-paid provision in Crosno's subcontract should provide a defense to its liability under the payment bond.  As we explain, none of the arguments is persuasive.

a.    *Permissibility of pay-when-paid clauses*

Travelers argues that pay-when-paid clauses, in contrast to pay-if-paid clauses, are enforceable because they merely fix "the usual time for payment to the subcontractor, with the implied understanding that the subcontractor in any event has an unconditional right to payment within a reasonable time."  (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885.) True enough.  We do not suggest that all pay-when-paid provisions are unenforceable against a payment bond claim—just that this one is.  The provision is in effect an attempt to define as "reasonable time" as a period previously construed by courts as *un*reasonable. (*Yamanishi*, *supra*, 29 Cal.App.3d at pp. 462−463; see *Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885 [citing *Yamanishi*]; *Capitol Steel*, *supra*, 58 Cal.App.4th at p. 1057 ["This body of law only permits payment to be delayed for a reasonable time after the completion of the work under the subcontract."].)  To permit Travelers to enforce the pay-when-paid clause to postpone payment for an indefinite timeframe under the bond would unreasonably affect or impair Crosno's remedial rights under the payment bond. Although Travelers is right that Crosno was eventually repaid its full principal, that happened more than *three years* after Crosno sought recovery under the payment bond.

20

Crosno has yet to recover any prejudgment interest, which remains the subject of this appeal. This protracted delay conflicts with the remedial purpose behind the statutory scheme, which we construe "most strongly against the surety and in favor of all persons for whose benefit the bond is given." (§ 8154, subd. (a).)

Striving to recast *Wm. R. Clarke* as *supporting* its view, Travelers claims the case "held" that pay-when-paid clauses in subcontracts are enforceable as not violative of public policy. *Wm. R. Clarke* did not so hold. It merely distinguished pay-if-paid clauses from pay-when-paid clauses as a general matter, explaining that the former operate as a condition precedent for payment whereas the latter merely set the usual time for payment, "with the implied understanding that the subcontractor in any event has an unconditional right to payment *within a reasonable time*." (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 885, italics added.) The court then proceeded to explain why the pay-if-paid provision at issue had the same effect as an impermissible waiver of payment bond rights under current sections 8122, 8124, and 8126. As the trial court reasoned here, the principles underlying the *Wm. R. Clarke* decision support a conclusion that the particular pay-when-paid clause in Crosno's subcontract is unenforceable because it has the effect of delaying payment to the subcontractor for what may be—and in this case was—an unreasonably long period of time.

Travelers and CEA suggest that the Legislature's enactment of prompt payment statutes demonstrate approval of contractual arrangements that require direct contractors to first pursue payment from project owners. But we agree with Crosno that this is an "apples to oranges argument." Enacted in 1990, the prompt payment statutes sought to

21

address industrywide problems with payment delays to subcontractors. They impose comprehensive deadlines for progress and retention payments, enforced by statutory penalties and fee-shifting provisions "intended to discourage owners and direct contractors from withholding monies owed as a way of granting themselves interest-free loans." (*United Riggers*, *supra*, 4 Cal.5th at p. 1088.) These statutes simply create a mechanism to facilitate prompt progress and retention payments in the usual course. They bear no relation to whether the pay-when-paid provision in Crosno's subcontract can forestall accrual of Travelers's payment bond obligation for an indefinite period until Clark's litigation with the District concludes.

b. *Scope of section 8122*

Next, Travelers protests that the trial court "twisted the statutory language into something it is not," by extending section 8122 to a contract provision that merely affects or impairs Crosno's remedial rights. In its view, section 8122 reflects "the Legislature's concern that owners and direct contractors may use superior bargaining power to extract claim waivers from subcontractors without paying for them." According to Travelers, "the Trial Court erred because the subcontract's 'pay-when-paid' provision does not in any way waive or release Crosno's right to payment on its claim." As we explain, Travelers reads section 8122 too narrowly.

Although commonly called an "anti-waiver" statute (see *Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 889), the text of section 8122 constrains not only actual *waiver* of a claimant's remedial rights, but also actions that *affect* or *impair* such rights. (§ 8122.) Likewise, section 8126 renders unenforceable not only those contract provisions that

22

purport to *waive* a claimant's rights but also those that "impair or otherwise adversely affect" such rights. (§ 8126.)

In this respect, California's statutory scheme offers broader protection than its federal analog, the Miller Act. (40 U.S.C. §§ 3131−3134). (See *Coast Electric Co. v. Industrial Indemnity Co.* (1983) 144 Cal.App.3d 879, 883 [Miller Act is "similar in content to the California public works statute," which is "commonly referred to as the 'Little Miller Act' "].) Like its California counterpart, the Miller Act is "highly remedial in nature" and entitled to liberal construction. (*United States ex rel. Sherman v. Carter* (1957) 353 U.S. 210, 216; *Walton*, *supra*, 290 F.3d at p. 1205.) Before a federal construction contract exceeding $100,000 may be awarded, a private contractor must furnish both a performance bond and a payment bond. (40 U.S.C. § 3131(a)−(b).) A *waiver* of payment bond rights is void unless it is in writing, signed, and executed after completion of work. (40 U.S.C. § 3133(c).) To be enforceable, there must be a " 'clear and explicit' " waiver of a subcontractor's Miller Act rights. (*Walton*, at p. 1208.) In other words, whereas federal law prohibits waiver of bond rights unless such waiver is clear and explicit, California's counterpart also prohibits measures that *affect* or *impair* those rights.

And even construing this more limited statutory language, federal courts have reasoned that allowing a surety to avoid liability on a payment bond based on an unsatisfied " 'pay when paid' " provision in the subcontract would prevent the subcontractor from enforcing its Miller Act rights, thereby amounting to an impermissible implied waiver. (*United States ex rel McKenney's*, *Inc. v. Government*

23

*Technical Services*, *LLC* (N.D. Ga. 2008) 531 F.Supp.2d 1375, 1380; see also *Walton*, *supra*, 290 F.3d at p. 1208 [construing " 'pay when and if paid' " clause].)[9]  It follows that the pay-when-paid provision here, which indefinitely postpones Crosno's right to recover under the payment bond until Clark's litigation with the District concludes, is unenforceable under California's broader antiwaiver statute.

Endeavoring to show that the trial court misconstrued section 8122, Travelers claims that under the court's logic, a host of common subcontract provisions would become unenforceable.  Insofar as subcontract provisions delay ultimate payment due, Travelers maintains they would affect or impair Crosno's payment bond rights.  We need not dwell on this hypothetical parade of horribles.  The effect of pass-through provisions, prelitigation dispute resolution clauses, notice requirements, retention provisions, and liquidated damage clauses is not before us.  Suffice to say, Travelers misconstrues both the trial court's ruling and our decision today that affirms it.  We do not suggest that *every* pay-when-paid provision is unenforceable as an impairment of payment bond rights under section 8122.  Instead, we conclude that this one is unenforceable because it unreasonably forestalls accrual of Crosno's payment bond rights for an indefinite period of time while the direct contractor pursues litigation against the owner.

---

9      Travelers's objection that *Walton* is a federal case involving the Miller Act is misplaced.  (See, e.g., *California Electric Supply Co. v. United Pacific Life Ins. Co.* (1964) 227 Cal.App.2d 138, 144−146 [interpreting public works payment bond statute by reference to cases construing its Miller Act counterpart; *Union Asphalt*, *Inc. v. Planet Ins. Co.* (1994) 21 Cal.App.4th 1762, 1768−1769 [distinguishing Miller Act as more restrictive than California statutes that extended protection to second-tier claimants].)

c.     *Preferring Subcontractors Over Direct Contractors*

Shifting to policy, Travelers claims "[t]here is no policy reason to prefer a subcontractor claim as deserving faster enforcement than that of the direct contractor." To the contrary, as Crosno observes, "a public works subcontractor has rights to a security that a general contractor doesn't." "The law has created a preferred position for persons who perform labor or supply materials for the improvement of real property." (9 Miller & Starr, Cal. Real Estate (4th ed. 2019) § 32:3, p. 15.) "The stop notice provisions [citation] protect materialmen and labor claimants by allowing for intercepting funds due from the public agency to the contractor." (*Department of Industrial Relations v. Seaboard Surety Co.* (1996) 50 Cal.App.4th 1501, 1508.) Likewise, payment bond statutes are "remedial in nature" and are designed "to protect the subcontractors from defaulting contractors." (*Capitol Steel*, *supra*, 58 Cal.App.4th at p. 1062.) Direct contractors like Clark have no right to file a stop notice nor payment bond claim. (§ 9100, subd. (b).) Travelers is thus incorrect that Clark and Crosno are "equally protected" under section 8122. Section 8122 protects the rights of "claimants," and Clark is expressly excluded from that category here. (§ 9100, subd. (b).)

Although Travelers complains that affirming the trial court's ruling will effectively make direct contractors and their sureties "financers of public works projects when the owner delays making payment," that is precisely the point. A payment bond shifts the risk of nonpayment from subcontractors to direct contractors *and their sureties* by affording public works subcontractors the equivalent of a mechanics lien remedy available in private works projects. (See *Capitol Steel*, *supra*, 58 Cal.App.4th at p. 1061;

25

9 Miller & Starr, Cal. Real Estate (4th ed. 2019) § 32:120, p. 380.)  In so doing, a surety bond both protects the public entity from liability for a defaulting contractor and provides a remedy for subcontractors and material suppliers on public works projects.  (*Liton*, *supra*, 16 Cal.App.4th at p. 584.)

By carving out expansive remedial legislation to protect subcontractors like Crosno, the statutory scheme reflects an express legislative preference to provide expedient enforcement procedures to subcontractors over direct contractors, who are required to insure against the risk by means of a payment bond.[10]  Moreover, Travelers's construction would not, as it suggests, place Clark and Crosno "on equal footing." Rather, it would prioritize Clark's litigation rights over Crosno's payment bond rights, in

---

[10]    Our review of the record and available legislative history sheds little light on the Legislature's reasons for codifying this preference.  Although Travelers suggests a general contractor "may be less able to weather the financial storm occasioned by the owner's delays in making payment than its subcontractor may be," a treatise states the opposite.  Unlike the subcontractor, the general contractor controls the entire project and has the direct relationship with the owner, potentially placing it in a better position to resolve payment disputes.  (3 Bruner & O'Connor Construction Law (2020) § 8:49.) Moreover, because "subcontractors are smaller and more thinly capitalized than general contractors," they may not be "well equipped to incur the credit risk of an insolvent or unwilling owner."  (*Ibid.*)  Ultimately, we draw no conclusion as to who between Clark and Crosno is better able to weather credit risk.  Travelers is correct that our record permits no reasonable inference on this matter.

conflict with the statutory aim to give subcontractors " 'a quick, reliable and sufficient means of payment' " under the bond. (*Cooley*, *supra*, 204 Cal. at p. 62.)[11]

d.      *Suretyship principles*

Finally, Travelers contends that a surety's obligation on the bond is coextensive with the bond principal's obligation, entitling it to assert the same defenses that Clark possesses as to the underlying obligation. CEA makes this same point in its amicus brief. (See §§ 2808 [surety's liability upon a conditional obligation "is commensurate with that of the principal"], 2809 ["The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal"].) *Wm. R. Clarke* addressed and rejected a surety's similar argument. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at pp. 893−894.) We find its discussion dispositive.

The surety in *Wm. R. Clarke* argued that no liability accrued under the payment bond until the direct contractor was in default of its payment obligation under the subcontract. The subcontract's "pay if paid" provision conditioned payment on the direct contractor receiving payment from the owner. Because no payment had been received, the surety argued, no bond liability accrued. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at p. 893.) "The fallacy of this reasoning," our Supreme Court explained, was that it

---

11      Travelers cites limiting language in *Capitol Steel* that *Wm. R. Clarke* "applies to a public works project *where there is no pending action against the government entity.*" (*Capitol Steel*, *supra*, 58 Cal.App.4th at p. 1052, italics added.) But as the trial court pointed out, "stop notice and payment bond remedies are cumulative." (*Id.* at p. 1061.) That *Capitol Steel* limited its conclusion to the facts before it (*id.* at p. 1052, fn. 1) does not suggest that Crosno's payment bond remedies may be impaired by Clark's long-pending lawsuit against the District.

27

considered only the direct contractor's obligation under the subcontracts while ignoring its independent liability under the payment bond. (*Ibid.*) As an older case explains, "[t]he action upon the statutory bond is not in any sense based upon the personal liability of the contractor but is based upon the obligation of the bond, since the bond provides a separate and distinct statutory remedy. The obligation of the bond, therefore, is enforceable without reference to any contract between the contractor and the [subcontractor or] materialman." (*Pneucrete*, *supra*, 7 Cal.App.2d at p. 738.)

*Los Angeles Stone Co. v. National Surety Co.* (1918) 178 Cal. 247, a case not cited by the parties, provides additional guidance. The City of Los Angeles entered a public works contract to improve a road. A payment bond identified the prime contract and required the surety to pay for labor and materials provided if the direct contractor failed to pay. (*Id.* at pp. 248−249.) The prime contract required the project to be completed by a specific date. (*Id.* at p. 249.) Thus, when a material supplier sought to recover on the payment bond, the surety argued it was not liable as to materials supplied *after* the deadline. (*Ibid.*) The Supreme Court rejected that argument, explaining that the surety's bond obligation was independent of the contract. (*Id.* at pp. 250−251.) "The covenant is that in case the [bond] principal fails, not in the performance of his contract with the city but in his obligations, express or implied, to pay for materials furnished in doing the work described in his contract with the city, the surety will pay them." (*Id.* at p. 250.) Insofar as the direct contractor incurred debt for labor and materials furnished in performing work for the project, the surety was liable if it failed to pay. (*Ibid.*)

28

Here, as in *Wm. R. Clarke*, the payment bond referred to Clark's prime contract with the District but did not mention the subcontract executed a few months later between Clark and Crosno. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at pp. 893−894.) The bond obligation is broad, imposing liability on Clark and Travelers if Clark failed to pay any claimant (§ 9100) with respect "to work or labor performed under the contract." As in *Wm. R. Clarke*, Traveler's obligation as the bond surety is independent of the pay-when-paid provision in the subcontract. (*Wm. R. Clarke*, at pp. 893−894.)

As Crosno suggests, Travelers advances an argument favored by the three dissenting justices in *Wm. R. Clarke*. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at pp. 903−907 (dis. opn. of Chin, J.).) They maintained that the surety was not liable under the payment bond unless the direct contractor defaulted under the subcontract. (*Id.* at p. 903 (dis. opn. of Chin, J.).) Because the owner had not paid the direct contractor, the dissent reasoned that the direct contractor was not in default. (*Ibid.*) In the dissent's view, "[t]he bond did not create an obligation on the part of the principal (or surety) divorced from any underlying obligation under either the general contract or any of the subcontracts." (*Id.* at p. 905 (dis. opn. of Chin, J.).) The dissent also invoked freedom of contract, stating the "parties validly could and did agree among themselves that each would assume equally the risk of owner default . . . ." (*Id.* at p. 908 (dis. opn. of Chin, J.).)

Whatever their merit, the relevant point for our purposes is that the *Wm. R. Clarke* majority rejected these arguments, concluding the bond obligation was independent of the subcontract. (*Wm. R. Clarke*, *supra*, 15 Cal.4th at pp. 893−894.) As to Travelers's contention that *Wm. R. Clarke* "expressly recognized that the lien or bond claimant

29

must—without reference to the lien or bond—establish a right to payment," the majority explained that this simply requires proof of a valid compensation claim, *not* "a separate payment obligation, contractual or otherwise" for payment by the bond principal.  (*Wm. R. Clarke*, at p. 896.)  The majority likewise rejected a "freedom of contract" argument as overridden by the Legislature's careful efforts to constrain subcontractors' ability to waive remedial rights.  (*Id.* at pp. 891−892.)  The majority's reasoning in *Wm. R. Clarke* is dispositive of Travelers' suretyship and freedom of contract arguments.

Because a public works payment bond is statutory in nature, specific statutory protections apply.  Pursuant to sections 8122 and 8126, the particular pay-when-paid provision in Crosno's subcontract is void and unenforceable in any action to recover under the payment bond, whether as to bond principal Clark or its co-obligor Travelers.  As Crosno points out, Travelers could still assert other defenses to the bond claim if, for example, "Crosno failed to timely and properly perform its scope of work."  Our interpretation does not, as CEA suggests, "allow subcontractors whose work is disputed to recover from [a] surety before merit is finally determined by the owner and the general contractor."  Here, Crosno's right to payment is undisputed.  We simply conclude that

Travelers cannot convert a broad obligation under the payment bond to an unreasonably narrow one via the pay-when-paid provision in Crosno's subcontract.[12]

In sum, as the trial court properly found on the facts of this case, the expansive pay-when-paid provision in Crosno's subcontract may not be invoked by Travelers as a defense to a payment bond action given the policies underlying the antiwaiver statute, section 8122. There being no other defense raised, the court did not err in finding no triable issue of material fact, granting Crosno's motion for summary judgment, and entering judgment in Crosno's favor for the undisputed $562,435 owed with prejudgment interest. Because Travelers raises no other basis to challenge the attorney's fees awarded, we also uphold the postjudgment order.

---

[12] *Fed. Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, cited by Travelers is not to the contrary. It merely stands for the proposition that where the bond claim "necessarily involves the determination of whether [the subcontractor] is entitled to be paid for labor and materials," the subcontractor must arbitrate its right to payment before it can pursue a claim against the surety under the payment bond. (*Id.* at p. 1373; see also *Walton*, *supra*, 290 F.3d at p. 1207 [although courts look to the underlying subcontract to determine the *measure* of sums justly due, they do not enforce terms affecting the timing or right of payment bond recovery].) As we have emphasized, Crosno's right to payment is not disputed in this case.

DISPOSITION

The judgment and postjudgment order are affirmed.  Crosno is entitled to recover its costs on appeal.

DATO, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

32